**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0712n.06
Filed: October 3, 2007

**Case No. 05-6723**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| LORENZO NAVARRO CALDERON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: MARTIN, BATCHELDER, and McKEAGUE, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Lorenzo Navarro Calderon appeals the sentence imposed by the district court following his plea of guilty to illegally reentering the United States after deportation. The court sentenced him to 38 months in prison, deportation, two years of supervised release, and a $100 special assessment. We affirm.

**I.**

Mr. Calderon is a Mexican citizen who was originally deported in 1980. Since then, he has returned to the United States illegally several times, has been convicted of a number of crimes, including robbery/burglary, concealed weapon, theft, petty theft, alien smuggling, and has been deported several times. Mr. Calderon's history is complicated by the fact that he has several aliases. On May 26, 2004, a minor traffic violation led to the discovery that he had again entered the United States illegally. A federal grand jury indicted him for Illegal Reentry after Deportation, in violation of 8 U.S.C. § 1326(a)(2) and (b)(2), and he pleaded guilty.

At sentencing, the government called two witnesses to prove that Lorenzo Navarro Calderon had been deported previously under the alias "Ingacio Mota-Pendrosa," and had previously been convicted of robbery and burglary under the alias "Albert Ramirez Aguilar." These witnesses testified to a fingerprint comparison, which demonstrated that all three names (as well as some others) belonged to the same person. Both witnesses were Immigration Customs Enforcement agents. The first was the investigator, who testified to collecting the fingerprints for submission to the FBI lab. The second was a fingerprint specialist who testified as an expert; he testified to conducting a verification of an analysis done by a third agent, now retired.

After hearing the testimony, the court commented expressly that it was troubled by the fingerprint expert, particularly the conclusory nature of his testimony and his unwillingness to do an in court fingerprint comparison. The court decided that it would accept the testimony, in spite of its concerns, for a variety of reasons, including the absence of countervailing evidence and a personal lack of scientific expertise. However, the court expressed no concern over the testimony of the first witness, and looking at the combined testimony of those witnesses, the court concluded that the government had met its burden of proving that Mr. Calderon was the person who committed the 1981 robbery/burglary. Ultimately, the court explained that it had considered the advisory guidelines and the § 3553(a) factors, and had concluded that this defendant's circumstances did not present any reason to impose a sentence outside of the guidelines range. The court sentenced Mr. Calderon incarceration for 38 months, followed by deportation and supervised release for two years. Mr. Calderon appealed to this court, challenging the fingerprint identification and the sentence.

## II.

Mr. Calderon assigns as error the district court's finding that he was the person who

committed a 1981 robbery attributed to one "Albert Ramirez Aguilar," which served as the basis for a sentence enhancement. "The burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003). This Court reviews a district court's factual findings in applying the sentencing guidelines for clear error. *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).

"The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Thomas v. Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (quotation marks omitted) (explaining that, under *Daubert*, the mere presentation of the expert's qualifications, conclusions, and assurances of reliability is not enough). "[E]xpert testimony, even if uncontradicted, may be believed in its entirety, in part, or not at all." *Dawahare v. Spencer*, 210 F.3d 666, 671 (6th Cir. 2000).

Mr. Calderon argues that the district court committed clear error by concluding that he was the person who committed the 1981 robbery/burglary, because the key evidence was the testimony of the government's fingerprint expert, about whose testimony the court expressed some concern. Mr. Calderon points to the court's having commented that it felt constrained to accept the testimony due to its own ignorance of the science of fingerprint identification and the fact that the testimony was uncontradicted.

The government produced two witnesses. The first testified to collecting the fingerprints, analyzing them via computer, and submitting them to the FBI for human verification. The second witness testified that the fingerprints had been analyzed by three different analysts — including himself — and that the results were consistent and verifiable. The court expressed its concern with this testimony:

[T]he testimony of the agent was in some ways disconcerting by its conclusory nature. He basically qualifies as an expert and the testimony was essentially, you know, it's this way because I have looked at it and I have said it this way.

I am a little bit troubled by the fact that he said I don't do in court comparisons, I don't do comparisons on Elmos, but I do comparisons based on good faxes and photocopies, and I just don't do this.

I'm not an expert looking at this thumb print, they didn't -- I mean, there [are] definitely things of them that did not look the same, but again he says that you have to look at the ridge detail and he said that he did that [] this morning with his traveling microscope but he did the copes [sic] back at the laboratory. And there were at least eight points of comparison and that's sufficient for this identification.

I have no countervailing evidence and I certainly admit that I'm no expert in this. And so the court has to accept his testimony, even though it is not perhaps as compelling as I would have hoped it would have been, but it is what it is. And he has testified based on his expertise with his zero error rate and the training that he has had that these are one in the same. So the court will accept that and find that it has not been rebutted by anything in the record.

In considering this appeal in light of the district court's express concerns, we are mindful that we review the district court's factual findings for clear error. *Galloway*, 439 F.3d at 322. We find that, despite these concerns, there was enough evidence to overcome a claim of "clear error."

**III.**

Mr. Calderon protests that the district court erred by granting a 16-level enhancement, per U.S.S.G. § 2L1.2(b)(1)(A), which resulted in a sentence greater than two years, because, although he was indicted for illegally re-entering the United States after having been deported, in violation of 8 U.S.C. § 1326(a)(2) and (b)(2), the "aggravating felony" required by § 1326(b)(2) was not charged in the indictment. We review *de novo* a constitutional challenge to a criminal sentence. *United States v. Rodgers*, 278 F.3d 599, 602 (6th Cir. 2002). Section 1326(a)(2) provides:

(a) In general
Subject to subsection (b) of this section, any alien who - -
. . .

4

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Section 1326(b)(2) provides:

> (b) Criminal penalties for reentry of certain removed aliens
>
> Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection - -
>
> . . .
>
> > (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both[.]

The district court applied U.S.S.G. § 2L1.2(b)(1)(A) — which increases the offense level by 16 for a violation of 8 U.S.C. § 1326, Unlawfully Entering or Remaining in the United States, if the defendant was previously deported after a conviction for a violent felony — because Mr. Calderon had a prior conviction for a violent felony, namely the 1981 robbery/burglary conviction. Mr. Calderon complains that because no specific aggravated felony conviction was charged in the indictment, use of that enhancement to sentence him to a term greater than the maximum sentence set out in § 1326(a)(2) violated his constitutional rights.

"[T]he law of this circuit remains as stated in *Almendarez-Torres v. United States*, 523 U.S. 224 (1995), i.e., that § 1326(b) lists sentencing factors rather than a separate crime, and therefore a § 1326(a) indictment need not include previous aggravated felonies for the defendant to be sentenced under the provisions of § 1326(b)." *United States v. Perez-Olalde*, 328 F.3d 222, 224 (6th Cir.

5

2003). Therefore, under the law of this circuit, Mr. Calderon's argument is unavailing.

**IV.**

Mr. Calderon protests that the district court erred by imposing a sentence that was unreasonable. This Court conducts a *de novo* review of the district court's legal conclusions regarding the sentencing guidelines, but reviews a district court's factual findings in applying the sentencing guidelines for clear error. *Galloway*, 439 F.3d at 322.

Post-*Booker*, the sentencing court must: (1) calculate the advisory guideline sentencing range, (2) consider the other § 3553(a) factors, and (3) impose a sentence that is sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2). The sentence must also fall within the statutory minimum and maximum sentence for the particular conviction. *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006).

Mr. Calderon relies on *United States v. Foreman*, 436 F.3d 638, 644 fn.1 (6th Cir. 2006), to argue that the court erred by considering "whether the sentence was within the guidelines or whether there are factors that warrant a nonguideline sentence," when it should have "undert[aken] an[] effort, as specifically required by *Foreman*, to ensure that the sentence it imposed was 'sufficient, but not greater than necessary, to comply with the purposes' of section § 3553(a)(2)." Apt.'s Br. at 28-29. But the Supreme Court has now made it clear that the district court's approach is entirely acceptable, and that where the district court has properly calculated the guidelines range — as the district court did here — and has considered the § 3553(a) factors — as the district court did here — a sentence within that range may properly carry a presumption of reasonableness. *Rita v. United States*, 551 U.S. --, 127 S. Ct. 2456, 2462-66 (2007).

**V.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.