**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0680n.06

No. 07-1541

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 13, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JOHN DAVID PRESLEY, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    KENNEDY, BATCHELDER, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Defendant John David Presley appeals his conviction and sentence for conspiracy to distribute marijuana. He raises several claims of error, only one of which has merit. For the following reasons, we **AFFIRM** defendant's conviction but **VACATE** his sentence and **REMAND** for the limited purpose of resentencing using the correct Sentencing Guidelines range.

## I. BACKGROUND

This case arises out of defendant's use of his trucking company to transport marijuana. In April 2002, defendant hired Stanley Eason as a truck driver. Eason soon became involved in the transportation of marijuana for defendant. Defendant would arrange for Eason to pick up marijuana in Arizona and Eason would deliver it to defendant's truck yard in Detroit, Michigan. On April 1, 2002, Missouri authorities stopped Eason's truck and seized 490 kilograms of marijuana.

In December 2003, defendant asked another of his drivers, Alvin Jackson, to pick up marijuana in Arizona and drive it back to Detroit. On January 4, 2004, Missouri authorities stopped Jackson's truck and seized 242 kilograms of marijuana. Jackson agreed to cooperate with the police. He attempted to conduct a controlled delivery of the marijuana to defendant's business in Detroit, which was ultimately unsuccessful.

On July 28, 2004, defendant was indicted on the charge of conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846. Eason and Jackson, who had entered into plea agreements with the government, both testified against defendant at his trial. A jury convicted him after a two-day trial on October 24 and 25, 2006. On April 19, 2007, the district judge sentenced defendant to a term of 151 months' imprisonment. Defendant timely appealed.

## II. ANALYSIS

On appeal, defendant raises several challenges to his conviction and sentence. Only one of these arguments—the challenge to the procedural reasonableness of his sentence—has merit and requires remand. We will address each argument in turn.

### A. Prosecutorial Misconduct

In his first claim of error, defendant argues that he is entitled to a new trial on the basis of prosecutorial misconduct. We review a claim of prosecutorial misconduct *de novo*. *United States v. Stover*, 474 F.3d 904, 914 (6th Cir. 2007). Because defendant did not object to the prosecutor's statements at trial, we will reverse only for plain error. *Id.*; *see also* FED. R. CRIM P. 52(b). To establish plain error, a defendant must show the following: (1) that an error occurred in the district

court;  (2) that the error was plain, that is, obvious or clear;  (3) that the error affected defendant's substantial rights;  and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009). "Only in exceptional circumstances in which the error is so plain that the trial judge and prosecutor were derelict in countenancing it will this court reverse a conviction under the plain error standard." *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001).

We use a two-step inquiry to determine whether a prosecutor committed misconduct.  The first question is "'whether the prosecutor's conduct and remarks were improper.'" *United States v. Kuehne*, 547 F.3d 667, 687 (6th Cir. 2008) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).  If so, the next question is "whether the improprieties were flagrant such that a reversal is warranted." *Id.*

Here, defendant argues that the prosecutor improperly vouched for the credibility of Eason and Jackson, both of whom testified as key witnesses for the government.  "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999).  It takes the form of either "blunt comments" or "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.*

Defendant first claims that the prosecutor improperly elicited testimony from Eason and Jackson that their plea agreements required them to testify truthfully.  Specifically, the following exchange occurred between Eason and the prosecutor:

> Q: Now, you are testifying pursuant to an agreement you made with myself and other members of the U.S. Government; is that also correct?
> A: Yes.
> Q: And what is that agreement?
> A: To tell the truth.
> Q: And what did you get in return?
> A: I just got a lighter sentence.

Similarly, the following exchange occurred between the prosecutor and Jackson:

> Q: Mr. Jackson, you are giving testimony today pursuant to an agreement you made with the U.S. Government; is that correct?
> A: Yes, sir.
> Q: And what is that agreement?
> A: That I won't be charged if I give truthful testimony.

Defendant also argues that the prosecutor improperly vouched for Eason and Jackson in his opening and closing statements. Defendant notes that the district court told the jury during *voir dire* that the use of agreements to testify in exchange for a potentially lesser sentence is "a very common practice," and that the prosecutor referred to this statement in his opening statement. In addition, the prosecutor specifically referred to the agreements with Eason and Jackson in his closing argument. He noted the following with respect to Eason:

> [Eason] indicated he knew he was testifying pursuant to an agreement he had concerning his sentence, that he was facing somewhere between a hundred and twenty-one and a hundred and fifty-one months, and as a result of his cooperation he was actually sentenced to fifty-four months.

As to Jackson, the prosecutor made a similar statement: "His arrangement was that he would not be prosecuted if he told the truth."

According to defendant, the prosecutor's references to Eason's and Jackson's agreements to give truthful testimony implied that the government "had some undisclosed method to determine

they were telling the truth." In support of this argument, defendant cites to this court's decisions in *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994), and *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Both cases, however, are distinguishable from this one.

In *Carroll*, the prosecutor's conduct was improper because he "blatantly implied that the [witness's] plea agreements ensure that the witnesses were truthful" and "did not give the jury any inkling that the government has no independent means of discerning truthfulness." 26 F.3d at 1389. The prosecutor also stated that "if the government or judge did not believe that the witnesses were being truthful, the witnesses would be in jeopardy." *Id.* In addition, he "implied that the Government would somehow be able to divine whether [the witnesses] were lying and would punish them accordingly," *id.*, stating, "What is the one thing that will keep [the witnesses] from doing any more [jail] time than necessary? The truth," *id.* at 1388 n.11. Here, in contrast, the prosecutor simply mentioned the existence of the plea agreements with Eason and Jackson; he did not imply that these agreements ensured that they were being truthful. The prosecutor also never implied that the government would be able to tell if Eason and Jackson were lying. Rather, he made clear that the credibility of both witnesses was a question for the jury, noting in his opening statement that "the question for you will be whether or not [Eason and Jackson are] telling the truth about where this marijuana was destined for."

Likewise, in *Francis*, this court generally approved of a prosecutor's reference to the plea agreement of a testifying witness. 170 F.3d at 550 ("We have allowed a prosecutor to refer to the plea agreement of a testifying witness."). Indeed, "[t]he prosecutor may elicit testimony about [the plea agreement's] terms, attack the credibility of the witness because of it and even refer to the plea

agreement of a government witness in an attempt to deflect defense counsel's use of the agreement

to attack the witness's credibility." *Id.* "The potential for impropriety emerges," the court noted,

"when a prosecutor explains that there is to be a recommendation to the witness's sentencing court

whether the terms of the plea agreement have been adhered to." *Id.* Thus, it was improper for the

prosecutor to state that if the witness testified truthfully, "it's my intent to, as a government's

representative, to recommend a 15 year sentence for him." *Id.* The wording of this statement, and

others like it, "made it clear that [the prosecutor's] recommendation would depend on whether she

personally believed [the witnesses] told the truth." *Id.* at 551. Moreover, the jury was aware that

the witness was offered a plea agreement only *after* the prosecutor believed him, which "indicated

a belief in the witness's credibility." *Id.* In this case, unlike *Francis*, the prosecutor elicited

testimony about the terms of Eason's and Jackson's plea agreements, but he never told the jury that

he would make a recommendation as to whether they had adhered to those terms. There was also

no indication that the plea agreements materialized only after the prosecutor believed Eason and

Jackson.

Moreover, this court has held that a prosecutor did not improperly vouch for the testimony

of witnesses in a case where, as here, the prosecutor merely presented the terms of the witnesses'

plea agreements. *See United States v. Trujillo*, 376 F.3d 593, 608 (6th Cir. 2004). In *Trujillo*, the

prosecutor elicited testimony from the witnesses that their plea agreements required them to tell the

truth. *Id.* ("Q: Was there a consideration from the government in exchange for truthful cooperation

in the case? A: Yes."). She also told the jury that the witnesses "promised to be truthful and

provide complete information." *Id.* Holding that this did not constitute improper vouching, the court

noted that "the prosecutor did not offer any personal observations or opinions as to the veracity of either [of the witnesses] . . . . Rather, the prosecutor's questions and comments merely encompassed the terms of [their] plea agreements which this Court has held to be permissible." *Id.* at 608-09 (citing *Francis*, 170 F.3d at 550). The court also held that the prosecutor did not improperly imply that the witnesses' testimony "was corroborated by any evidence known to the Government but not presented to the jury." *Id.* at 609. The prosecutor in this case—like the prosecutor in *Trujillo*—did not offer his personal opinion as to Eason's and Jackson's veracity, nor did he imply that the government could somehow corroborate their testimony. He simply elicited testimony about the terms of their plea agreements, and mentioned those terms again in his closing argument.[1]

We conclude that the prosecutor did not improperly vouch for Eason's or Jackson's testimony. Because the prosecutor's statements were not improper, we need not decide whether they were sufficiently flagrant to warrant reversal or whether there was plain error. Accordingly, defendant is not entitled to a new trial on his claim of prosecutorial misconduct.

**B. Confrontation Clause**

Second, defendant argues that the government elicited inadmissible hearsay statements from DEA Agent Steven Tenprano in violation of the Confrontation Clause. We review alleged Confrontation Clause violations *de novo*. *United States v. Powers*, 500 F.3d 500, 505 (6th Cir.

---

[1]Further, it is difficult to understand how the district court's statement that plea agreements are "very common" and the prosecutor's suggestion in his opening statement that both Eason and Jackson were involved in the crime lends any support to defendant's argument that the prosecutor improperly vouched for the credibility of Eason and Jackson. Neither of these statements implies that the prosecutor personally believed that Eason and Jackson were being truthful.

2007). Because defendant did not object to the admission of these statements at trial, plain error review applies. *Id.*; *see also United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. Under the Confrontation Clause, testimonial hearsay evidence may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 67 (2004). "The admission of a testimonial statement . . . does not necessarily trigger a violation of the Confrontation Clause." *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007). The statement must also be used as hearsay. *Id.* Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c).

As evidence of inadmissible hearsay, defendant first cites Agent Tenprano's testimony that Missouri authorities contacted him shortly after the arrests of both Eason and Jackson. According to Agent Tenprano, the Missouri authorities told him that Eason had been arrested with over 1,000 pounds of marijuana. At that point, he testified that the DEA decided not to fund a controlled delivery. "[A]pproximately a year later," Missouri authorities contacted him again, advising him that "a second individual was transporting approximately two hundred and forty-four pounds of marijuana." The Missouri authorities also advised him that "Mr. Jackson had made a statement that the marijuana was intended for Mr. Presley." *Id.* After receiving the information regarding Jackson, Agent Tenprano testified that the DEA "attempted a controlled delivery." *Id.*

Contrary to defendant's assertions, the information Agent Tenprano received from the Missouri authorities does not constitute inadmissible hearsay. The statements were not offered to prove their truth—that is, that Eason and Jackson were in fact stopped by Missouri police, or that Jackson said the marijuana was intended for defendant. These facts were confirmed independently through the testimony of both Eason and Jackson. Instead, as the government points out, Agent Tenprano used the statements of the Missouri authorities to provide background evidence for his description of the enforcement actions taken by the DEA with respect to defendant. *See Gibbs*, 506 F.3d at 486 (holding that statement that the defendant had guns in his bedroom was offered "solely as background evidence to show why [the defendant's] bedroom was searched," not to prove the defendant had guns in his bedroom). Because these statements are not hearsay, they did not violate defendant's rights under the Confrontation Clause and it was not error—much less plain error—for the district court to admit them.

Defendant next argues that the portion of Agent Tenprano's testimony describing the 2004 controlled delivery attempt in Michigan contained inadmissible hearsay. Agent Tenprano testified that during the controlled delivery, the agents observed a green pickup truck circling the block where Jackson's trailer was parked, and "we asked the Wayne County Sheriffs to conduct a traffic stop and identify the subjects driving the trucks." The drivers were "[i]dentified as a Mr. Miller and . . . Hocardin Rasheed." *Id.* The following day, after the unsuccessful controlled delivery attempt, the DEA took defendant into custody. "At that time," Tenprano testified, defendant "was in possession of an organizer—a silver organizer with a series of phones containing his number. We saw Mr. Rasheed's name there with a phone number attached there." *Id.* Agent Tenprano's testimony of the

Wayne County Sheriff's statement identifying the drivers as Miller and Rasheed may have technically been hearsay: it was offered to prove that Rasheed—presumably one of defendant's coconspirators—was at the scene of the controlled delivery.

To the extent the identification of Rasheed was hearsay, however, admitting it did not amount to plain error because it did not affect defendant's substantial rights. *See Carson*, 560 F.3d at 574. To affect a defendant's substantial rights, an error "'must have affected the outcome of the district court proceedings.'" *United States v. Hayes*, 218 F.3d 615, 622 (6th Cir. 2000) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Here, defense counsel did not object to the admission of Agent Tenprano's testimony. But even if he had, the prosecutor could have easily called the Wayne County Sheriff to testify as to what happened during the controlled delivery attempt, and the outcome of the trial would have been the same. Knowing this, defense counsel likely made a strategic decision not to object to the admission of the hearsay testimony by Agent Tenprano. Moreover, there was ample testimony from both Eason and Jackson that defendant was involved in the transportation of marijuana; there is no reasonable possibility that the identification of Rasheed in the vicinity of the controlled delivery, and his subsequent connection to defendant by way of the organizer entry, affected the outcome of this case. Because defendant cannot show that he was prejudiced by any error in admitting this statement of identification, his Confrontation Clause claim fails.

## C. Jury Instructions

Third, defendant argues that the district court violated his due process rights by failing to properly instruct the jury. We review a district court's choice of jury instructions for abuse of

discretion. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000). Jury instructions are reviewed "as a whole to determine whether they fairly and adequately inform the jury of relevant considerations and explain the applicable law to assist the jury in reaching its decision." *Id.* at 760. "Failure to object to jury instructions at trial results in a forfeiture of one's right to raise the alleged error on appeal" and is therefore reviewed for plain error. *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007). Further, "a district court's decision not to give a jury instruction will only be reversed if 'the proposed instruction is correct, is not substantially covered by the charge, and is so important that failure to give it substantially impairs the defense.'" *United States v. Hunter*, 558 F.3d 495, 505 (6th Cir. 2009) (quoting *United States v. Blood*, 435 F.3d 612, 623-24 (6th Cir. 2006)). Where a defendant did not request a particular instruction below, a challenge to the district court's failure to give that instruction is also subject to plain error review. *Id.*

Defendant first argues that the district court's instructions regarding the testimony of Eason and Jackson were confusing and misleading in light of its previous instructions during voir dire. At voir dire, the district court posed the following question to potential jurors:

> Will any of you sitting here now if you know that a witness has been offered some leniency on his or her sentence as a result because of his testimony, will any of you sitting here now disbelieve that witness right from the get go because he's testifying for—any of you would reject his or her testimony—could you evaluate that part of the testimony the same as you will any other witness' testimony?

After trial, the district court instructed the jury that they should consider Eason's and Jackson's testimony "with more caution than the testimony of other witnesses. Consider whether their testimony may have been influenced by the Government's promise." Defendant does not claim these final instructions were error; instead, he maintains that they were confusing in light of the district

court's initial instruction during voir dire. The question the district court posed to the potential jurors at voir dire, however, was not a jury instruction. And even if it was, the district court did not ask the jury to ignore the fact that a witness was testifying pursuant to an agreement with the government. Rather, it merely sought to identify potential jurors who would *automatically* discredit such testimony. This does not conflict with the district court's final jury instructions.

Defendant next challenges the district court's failure to provide a cautionary jury instruction regarding the agreements between the government and Eason and Jackson. He argues that the prosecutor's elicitation of the terms of these agreements "created a danger that the jury would assume the prosecutor has some special way to determine these two witnesses were telling the truth," and that the district court should have instructed the jury to dispel any of these assumptions. As discussed above, however, the prosecutor did not improperly vouch for the credibility of either Eason or Jackson. Thus, there was no need for a cautionary instruction, and the failure to give it did not substantially impair the defense.

Defendant also argues that the district court failed to read the final paragraph of Sixth Circuit Pattern Instruction 7.08 to the jury, which states: "The fact that _____ has pleaded guilty to a crime is not evidence that the defendant is guilty, and you cannot consider this against the defendant in any way." Defendant argues that the failure to give this instruction created a risk that the jury would improperly assume defendant was guilty because Eason and Jackson had both pleaded guilty. But any such risk was addressed by the district court's charge on the presumption of innocence, which stated that, "[y]ou must make your decision based only on the evidence that you saw and heard here in court." This instruction on the presumption of innocence "substantially covered the standard by

which the jury should consider [Eason's] and [Jackson's] testimony." *United States v. Mason*, 126 F. App'x 702, 705 (6th Cir. 2005) (holding that the presumption of innocence instruction substantially covered the substance of the last paragraph of Sixth Circuit Pattern Instruction 7.08). In addition, the omission of the final paragraph of the instruction did not substantially impair the defense because there was more than enough evidence in the testimony of Eason and Jackson that defendant was guilty of the charged offense in his own right. The district court's failure to read the final paragraph of Sixth Circuit Pattern Instruction 7.08 therefore does not entitle defendant to a new trial.

Finally, defendant argues that the district court failed to give Sixth Circuit Pattern Instruction 7.04 involving the use of prior inconsistent statements not made under oath, which provides the following:

(1) You have heard the testimony of _____. You have also heard that before this trial he made a statement that may be different from his testimony here in court.

(2) This earlier statement was brought to your attention only to help you decide how believable his testimony was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.

Defendant claims both Eason and Jackson were impeached with prior inconsistent statements not made under oath.[2] He argues that the district court's failure to give Sixth Circuit Pattern Instruction 7.04 caused the jury to misunderstand the significance of these conflicting statements. But the

---

[2]These statements related to whether Eason carried four or six loads of marijuana for defendant, whether Jackson and his wife had ever socialized with defendant and his wife, and whether Jackson ever stated that he feared what defendant would do to him if he cooperated with the government.

district court did give the following instruction regarding the significance of prior inconsistent

statements:

> Ask yourself if the witness testified inconsistently while on the witness stand, or if the witness said or did anything off the stand that is inconsistent with what the witness said while testifying. If you believe that the witness was inconsistent, ask yourself if this makes the witness's testimony less believable. Sometimes it may; other times it may not. Consider whether the inconsistency was about something important, or about some unimportant detail. Ask yourself if it seemed like an innocent mistake, or if it seemed deliberate.

Because this instruction substantially fulfilled the purpose for which defendant claims Sixth Circuit

Pattern Instruction 7.04 should have been given, the district court did not err.[3]

**D. Sentencing Error**

Defendant next contends that his sentence was procedurally unreasonable. Following *United

States v. Booker*, 543 U.S. 220 (2005), we review a district court's sentencing decisions "under a

deferential abuse-of-discretion standard," for reasonableness. *Gall v. United States*, 128 S. Ct. 586,

591 (2007); *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008). This inquiry consists of

both a procedural and a substantive component. *Gall*, 128 S. Ct. at 597.

On appeal, defendant only challenges the procedural reasonableness of his sentence. A

sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates)

the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors,

---

[3]It is also worth noting that the purpose of Sixth Circuit Pattern Instruction 7.04 is *not*, as defendant argues, to inform the jury that they can consider prior inconsistent statements in assessing a witness's credibility. Rather, its purpose is to inform the jury of the *limited* use of these statements. Thus, failing to give Sixth Circuit Pattern Instruction 7.04 in this case also did not substantially impair the defense.

selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *Id.* We review the district court's application of the Sentencing Guidelines *de novo* and the district court's findings of fact at sentencing for clear error. *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007). Because defendant did not object to the procedural reasonableness of his sentence at the sentencing hearing, we review his challenge for plain error. *See United States v. Story*, 503 F.3d 436, 438 (6th Cir. 2007).

Here, both the government and defendant agree that the sentence was procedurally unreasonable in one respect: the district court sentenced defendant using an improperly calculated Guidelines range. The Presentence Investigation Report ("PSR") noted the base offense level was 28 for "offenses involving at least 400, but less than 700 kilograms of marijuana." However, in the right hand column of the PSR, the base offense level was noted as 30. With an additional two points added for defendant's leadership role in the offense, the district court calculated the Guidelines range using an offense level of 32, which yielded a range of 151 to 188 months. In fact, the parties agree that the total offense level should have been 30, which would have yielded a Guidelines range of 121 to 151 months. As the government admits, this was plain error. *See Story*, 503 F.3d at 440-41 (holding that the district court's incorrect calculation of the Guidelines range, which resulted in a 22-month difference in the lower end of the range, was plain error).

But defendant raises another challenge to the district court's calculation of the Guidelines range. He argues that the drug quantity calculation contained in the PSR and adopted by the district court—400 to 700 kilograms—was clearly erroneous. According to defendant, he should instead be sentenced based upon a drug calculation of 100 to 400 kilograms. As a factual determination, we

generally review a district court's drug quantity calculation for clear error. *United States v. Olsen*, 537 F.3d 660, 662 (6th Cir. 2008).

The government need only establish a particular drug quantity by a preponderance of the evidence, and "an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2009). Here, although defendant admits that his trial counsel stipulated to a gross weight of 732 kilograms, he argues this was a gross amount that also included the weight of the packaging. But he offers no evidence that the actual weight of the marijuana was less than 400 kilograms. And the PSR noted that "according to DEA agents, the net weight of the marijuana would be more than 400 kilograms." Moreover, the drug quantity used by the district court *did* err on the side of caution because it assumed that a gross weight of 732 kilograms included a net weight under 700 kilograms. This calculation also did not include any of the marijuana hauled by Eason prior to the seizure of his truck on April 1, 2002. Finally, defendant argues that the jury only found him responsible for 100 kilograms or more of marijuana. Clearly, however, this jury finding is not at all inconsistent with the PSR's drug quantity calculation. Accordingly, we conclude that the district court's drug quantity calculation was not clearly erroneous.

Ultimately, we vacate defendant's sentence and remand to the district court for the limited purpose of resentencing defendant under the properly-calculated Guidelines range, based upon an offense level of 30. Under this limited remand, however, the district court need not revisit the drug quantity calculation of 400 to 700 kilograms.

**E. Ineffective Assistance of Counsel**

Although defendant's brief asserted a claim for ineffective assistance of counsel, his appellate counsel expressly waived this claim at oral argument. At any rate, we generally do not consider claims of ineffective assistance of counsel on direct appeal "because the record of trial counsel's deficient performance is not fully developed." *United States v. Johnson*, 553 F.3d 990, 999 (6th Cir. 2009); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003). Even absent waiver of the ineffective assistance argument, we see no reason to depart from the general rule in this case.

## F. Cumulative Error

Defendant's final argument on appeal is that the cumulative effect of the errors at his trial rendered it fundamentally unfair and deprived him of due process of law. To obtain a new trial on the basis of cumulative error, "a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *Trujillo*, 376 F.3d at 614. "But cumulative-error analysis permits us to look only at actual errors, not non-errors." *United States v. Wheaton*, 517 F.3d 350, 371 (6th Cir. 2008). Here, the only error was the admission of the hearsay statement identifying Rasheed at the scene of the controlled delivery in Michigan. As discussed above, all of the other errors alleged by defendant lack merit. One error is clearly not sufficient to reverse a conviction on the basis of cumulative error, and defendant's claim of cumulative error therefore fails.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** defendant's conviction but **VACATE** his sentence and **REMAND** for the limited purpose of resentencing using the correct Sentencing Guidelines range.