NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0059n.06

No. 10-3021

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 27, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,           )
                                    )
      Plaintiff-Appellee,           )
                                    )
v.                                  )     On Appeal from the United States
                                    )     District Court for the Southern
DANIEL A. BATISTA,                  )     District of Ohio
                                    )
      Defendant-Appellant.          )

Before:     GUY, BOGGS, and GIBBONS, Circuit Judges.

      BOGGS, Circuit Judge. Daniel A. Batista, a thirty-four-year-old Panamanian citizen,

illegally reentered the United States after having been deported subsequent to his commission of an

aggravated felony. *See* 8 U.S.C. § 1326(a), (b)(2). The district court sentenced Batista to a term of

78 months in prison. We vacate Batista's sentence as procedurally unreasonable and remand for

resentencing.

I

      Batista first entered the United States as a child of a United States citizen in 1987, shortly

before his eleventh birthday. Having previously attended school on a military base in Panama,

Batista was already familiar with the English language at the time he entered the country. From 1987

until 1990, Batista moved multiple times with his family: from Georgia to North Carolina, then back

to Georgia, then to California, and then back to Georgia again.

Throughout his teens and early twenties, Batista repeatedly violated the law. While in California, at the age of thirteen, Batista was arrested on five separate occasions and was convicted in juvenile court of four offenses, including three thefts. Although Batista kept a clean record for a few years after moving back to Georgia, his criminal behavior ultimately returned. In 1994, at the age of seventeen, Batista was charged with multiple counts of burglary. He was ultimately convicted and sentenced to seven years in prison for these offenses, but he was released on parole after three months. In 1997, when he was twenty-one, Batista moved to Columbus, Ohio, and the Ohio Adult Parole Authority took over the duty of supervising Batista during the remainder of his term of parole. Over the next three years, Batista was arrested five times, primarily for driving-related offenses. For these crimes, Batista was sentenced to a total of 240 days in jail, although that time was suspended and Batista instead submitted to three days in an alcohol program and one year of probation, which concluded in 2000.

In 2001, Batista began seeing his current wife, Amanda Dixon. He soon moved in with Dixon and helped raise her child, who was less than a year old at the time. Late that year, Batista committed a sexual crime against a different woman. In October 2002, Batista was convicted of Gross Sexual Imposition for his conduct and was sentenced to 11 months in prison. Batista was released from prison in July 2003, and, on December 29 of that year, he was deported back to Panama. Dixon followed Batista to Panama, arriving with their infant son whom Batista had not yet seen, and the two were married in February 2004. Shortly thereafter, Batista returned—illegally—to the Columbus area with his family. *See* 8 U.S.C § 1326(a), (b)(2).

Upon his return to the United States in early 2004, Batista paid to have false identification documents produced in the name of Carlos Acevedo. Under his false name, Batista worked as a cable installer until 2008. During this four-year period, Batista kept a clean record, worked without incident six days per week, spent time with his family, and, according to his wife, was a good father and no longer went out drinking with his friends, as he had done prior to his deportation.

Despite his best efforts, Batista was unable to live as family-man Carlos Acevedo forever. In early 2008, Batista's wife argued at work with one of her coworkers, and the coworker was fired. The coworker, who knew about Batista's past, called police and alerted them to his false identity and illegal status. The coworker also accused Batista of threatening to harm her, and a summons was issued to Batista for a misdemeanor charge of Menacing. That charge was ultimately dismissed. On May 29, 2008, Immigration and Customs Enforcement ("ICE") agents located Batista at his home and confronted him about his true identity. When the agents notified Batista that he was under arrest, he pushed them away and fled the scene. The following day, an arrest warrant was issued for Batista, who had fled to Georgia, where he resided with a friend until January 2009. At that time, he returned to Ohio to be with his family, and, to avoid detection, he paid for new false identification documents, this time in the name of Adlai Steve Ferrell. Ferrell was short-lived. On February 20, 2009, an Ohio State Highway Patrol trooper stopped a vehicle for a traffic violation and identified Batista as a passenger. The trooper arrested Batista on the outstanding warrant and turned over the false identification documents to ICE.

On March 24, 2009, Batista was indicted on three counts: (1) being in the United States after having been deported, in violation of 8 U.S.C. § 1326(a)(2) and (b)(2); (2) using the identification

of another person, Carlos Acevedo, in violation of 18 U.S.C. § 1028A(a)(1); and (3) using the identification of another person, Adlai Steve Ferrell, also in violation of 18 U.S.C. § 1028A(a)(1). In exchange for the dismissal of Counts 2 and 3, Batista pleaded guilty on August 12, 2009, to Count 1, being in the United States after having been deported.

On December 7, 2009, the federal probation officer submitted a Presentence Investigation Report ("PSR"). The PSR determined that Batista had 12 criminal history points for his prior convictions, and that total was increased by two points pursuant to USSG §4A1.1(e) because the underlying offense was committed less than two years after Batista's release from prison for Gross Sexual Imposition. This adjustment pushed Batista into criminal history category VI. The base offense level of Batista's violation of 8 U.S.C. § 1326(a) is 8, but because Batista had been previously deported after having committed a crime of violence—the burglary offense that Batista committed when he was seventeen years old—the PSR added 16 levels pursuant to USSG §2L1.2(b)(1)(A)(ii).[1] The PSR deducted three levels because Batista accepted responsibility for his crime and was timely in notifying the government of his intention to enter a plea. Based on Batista's adjusted offense level of 21 and criminal history category of VI, the Guidelines recommended a sentence of 77 to 96 months in prison, and the PSR recommended a sentence of 85 months, in the middle of the Guidelines range.[2]

---

[1]Although the government raised the issue at sentencing, the district court made no determination as to whether Batista's Gross Sexual Imposition charge could also be considered a crime of violence.

[2]Without the 16-level enhancement, Batista's total offense level would have been 5. With that offense level and the criminal history category of VI used in the report, Batista's Guidelines

Batista was sentenced on January 6, 2010. At the sentencing hearing and in a written sentencing memorandum filed the previous day, Batista argued that his criminal history was overstated by two categories because many of his convictions took place during his youth. The court agreed in part, "find[ing] that [Batista's] criminal history category is slightly overstated," and reduced Batista's criminal history category from VI to V. The reduced criminal history category established an adjusted Guidelines range of 70 to 87 months. Batista also argued that the 16-level increase in his offense level based on a crime he committed in 1994 overstated the seriousness of the offense, but the court stated that it adequately adjusted for Batista's juvenile status at the time of the burglary convictions by reducing his criminal history category. Batista further argued that he would likely suffer an additional period of incarceration while waiting to be deported after this sentence, and the district court stated that it would "sentence *at the low end of the guideline range* to account for this." (Emphasis supplied). After the government's colloquy, the district judge considered Batista's remaining arguments in favor of a lower sentence and concluded that "[a] sentence of 78 months *at the—toward the lower end of the guideline range* is appropriate based on defendant's arguments in his sentencing memorandum." (Emphasis supplied).

Although the district court's written judgment similarly reflected that Batista was sentenced to 78 months in prison, in the sealed statement of reasons,[3] the district judge wrote that "[t]he

range would have been 9–15 months in prison. USSG §5A.

[3]A district court is required to submit to the United States Sentencing Commission a written statement of reasons for every criminal sentence that it imposes. 28 U.S.C. § 994(w)(1). In order to safeguard confidential information, the statement of reasons form is not available for public disclosure, but it is made available to defense counsel, government attorneys, and various

sentence of **70** months, at the low end of the new guideline range[,] is appropriate based on the

Defendant's arguments in his sentencing memorandum." (Emphasis supplied). Accordingly,

between the court's multiple references to a term "at" or "toward" the bottom of the Guidelines

range, which was 70–87 months, the orally-pronounced term of 78 months, and the 70-month term

in the sealed statement of reasons, the sentencing record is confusing, both as to what sentence the

judge intended to give and, significantly, what Guidelines range the judge relied upon.

Batista filed this timely appeal, arguing that his sentence is both procedurally and

substantively unreasonable. This court has jurisdiction to review the district court's sentence.

II

A

This court reviews a district court's sentence for an abuse of discretion. *United States v.*

*Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009). However, plain-error review applies to

claims that were not raised before the district judge. *United States v. Vonner*, 516 F.3d 382, 385-86

(6th Cir. 2008) (en banc). To establish plain error, the defendant must show "(1) error (2) that was

obvious or clear (3) that affected [his] substantial rights and (4) that affected the fairness, integrity,

or public reputation of the judicial proceedings." *Id.* at 386 (internal punctuation and citation

omitted). To meet this standard, not only must the error be clear, but there must be a "reasonable

probability" that it affected the outcome of the proceeding. *United States v. Marcus*, 130 S. Ct.

2159, 2164 (2010).

---

government agencies and offices. *United States v. Espinoza*, 514 F.3d 209, 213 n. 5 (2d Cir. 2008).

When reviewing a sentence for an abuse of discretion, this court first considers whether the sentence is procedurally reasonable. *Barahona-Montenegro*, 565 F.3d at 983. Procedural review involves a three-factor analysis: (1) whether the court properly calculated the Guidelines range; (2) whether the court considered the § 3553(a) factors and the parties' arguments; and (3) whether the court adequately explained why it imposed the chosen sentence. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).

If the court determines that the sentence is procedurally reasonable, it next reviews the sentence for substantive reasonableness. *Barahona-Montenegro*, 565 F.3d at 983. Substantive review requires that the court "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Due deference must be given to the sentencing judge's decision, and the fact that this court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Ibid*. Further, within-Guidelines sentences receive a presumption of reasonableness. *United States v. Graham,* 622 F.3d 445, 464 (6th Cir. 2010).

B

Batista's sole procedural argument is that the district court did not use the correctly-calculated Guidelines range. Batista did not raise this argument at the sentencing hearing and, as he concedes, this court must therefore apply plain-error review. Appellant's Br. at 8; *see United States v. Story*, 503 F.3d 436, 438 (6th Cir. 2007) (applying plain-error review where defendant failed to object to sentencing judge's misstatement of the Guidelines range).

Batista's argument is an unusual one. He does not allege that the district judge miscalculated the Guidelines range. *Cf. Barahona-Montenegro*, 565 F.3d at 981. Nor does he allege that the district judge correctly calculated but misstated the Guidelines range. *Cf. Story*, 503 F.3d at 438. Rather, Batista alleges that, although the district judge correctly calculated and stated the Guidelines range, the judge *actually used* the incorrect Guidelines range. Appellant's Br. at 10–11. For that reason, the cases that Batista cites for support are not controlling because they involve situations where the district judge stated an incorrect Guidelines range. In *United States v. Lee*, for example, the district court stated that the Guidelines range was 15–21 months, but it was actually 12–18 months. 288 F. App'x 264, 272 (6th Cir. 2008). And in *United States v. Presley*, the district court used an incorrect base offense level to calculate the Guidelines range, which resulted in an incorrect range. 349 F. App'x 22, 31 (6th Cir. 2009). Those cases do not speak to this situation, where the district court stated the correct Guidelines range.

Although claims such as Batista's that depend entirely on what went on in the sentencing judge's head are likely to suffer from a dearth of evidence, in this case, Batista's claim is compelling. Here, the original Guidelines range was 77–96 months and the adjusted range was 70–87 months. Although the judge correctly stated the adjusted Guidelines range, he imposed a sentence of 78 months, which he referred to as "at the—toward the lower end" of the Guidelines range. Because the midpoint in the adjusted Guidelines range is 78.5 months, a sentence of 78 months—as close to the middle of the range as one can get without splitting years—cannot reasonably be considered "at" or even "toward" the lower end of the range. On the other hand, 78 months is inarguably "toward the lower end" of the unadjusted range of 77–96 months, which Batista argues that the judge

improperly relied on when determining his sentence. This argument is further supported by the district judge's comments earlier in the sentencing hearing. Clearly indicating that he intended to sentence Batista at the bottom—not the middle—of the Guidelines range, the judge stated that "the Court will take into consideration the additional term of incarceration while awaiting deportation and sentence *at the low end* of the guideline range to account for this." (Emphasis supplied). The transcript of the sentencing hearing manifests that, although the district judge stated the correct Guidelines range, he erroneously relied upon an incorrect one.

The judge's comments in the sealed statement of reasons confirms this conclusion. In the statement of reasons, the judge referred to a sentence of 70 months, "at the low end" of the Guidelines range. Although, as the government notes in its brief, the judge's oral sentence of 78 months controls over the 70 months referenced in the statement of reasons, the question is not whether Batista was actually sentenced to 70 months in prison, but whether the district judge relied upon an incorrect Guidelines range when sentencing him to 78 months in prison. *Cf. United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) (holding that an unambiguous oral sentence controls in the event of an inconsistent written sentence). A 70-month sentence cannot be at or towards the low end of the incorrect 77–96 range, but obviously *is* at the low end of the correct 70–87 range. The statement of reasons thus confirms the view that the district judge desired to sentence Batista at the bottom of the Guidelines range, and by sentencing him to 78 months in prison, relied upon the incorrect range.

No. 10-3021
*United States v. Batista*

The government cites no authority suggesting that Batista cannot rely upon the written statement of reasons to support his claim that the judge relied upon an improper Guidelines range,[4] nor is there any practical reason to disallow consideration of the statement of reasons in this situation. The reason that oral sentences control in the event of a conflicting written sentence is that "'[a] defendant is present only when being sentenced from the bench[,]'" and "'[s]entencing should be conducted with the judge and defendant facing one another and not in secret.'" *Ibid.* (quoting *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987)). Accordingly, this court has disallowed the use of a statement of reasons to save a sentence from an inadequate explanation given at the oral sentencing hearing. *Barahona-Montenegro*, 565 F.3d at 986. This holding is consistent with the primary purpose of procedural review, which is to assure that the defendant be given an adequate explanation for his sentence as well as a chance to respond. *See United States v. Bostic*, 371 F.3d 865, 871–73 (6th Cir. 2004).

---

[4]We note that, in unpublished dispositions, other circuits have rejected similar claims premised on conflicting statements of reasons. *See United States v. Ilaraza*, 293 F. App'x 320, 321–22 (5th Cir. 2008) (noting that the oral sentence controls and therefore rejecting defendant's argument, premised upon a conflicting statement of reasons, that the district court erred by not sentencing the defendant according to its intention); *United States v. Cardwell*, 220 F. App'x 213, 213–14 (4th Cir. 2007) (rejecting argument that the defendant was erroneously given too high a sentence because the oral sentence controls over conflicting reasoning given in statement of reasons). The claims in these cases are distinguishable, however. Unlike Batista's situation, the claims in these cases rely entirely on what the sentencing judge stated in the statement of reasons and have no support in the sentencing transcript. More significantly, the claims are based on the sentence that the judge intended to give—the *substantive* result—as opposed to the Guidelines range that the judge relied on—the *procedural* path to that result. Accordingly, these cases are inapposite and, in any case, do not bind this court.

Here, however, the judge's statements at the sentencing hearing were contradictory and suggested that Batista's sentence was procedurally infirm. To disallow consideration of the statement of reasons to *confirm* that procedural infirmity would be to turn the reasoning for the rule on its head. Rather than ensuring that the judge gives an adequate explanation at the sentencing hearing, refusing to consider the statement of reasons in this case would serve only to protect an *inadequate* explanation. Notably, this is not a case where the oral hearing unveiled no irregularities and the defendant mounts a procedural attack premised only upon a conflicting statement of reasons. Rather, the transcript of Batista's oral sentencing hearing manifests a strong likelihood that the sentencing judge committed a procedural error and Batista relies on the statement of reasons only to confirm that error. Under these circumstances, we hold that it is appropriate to consider the statement of reasons, which is consistent with the judge's comments at the sentencing hearing and indicates that he intended to sentence Batista at the bottom of the Guidelines range. The statement strongly suggests that the judge, by sentencing Batista to a term of 78 months in prison, *plainly* relied on the incorrect Guidelines range. *See United States v. Damra*, 621 F.3d 474, 496 (6th Cir. 2010) (noting that the plain-error test requires that the error "be clear or obvious, rather than subject to reasonable dispute") (quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)).

It is well-established in this circuit that a district court's failure to use a properly-calculated Guidelines range constitutes plain error. *United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009); *Presley*, 349 F. App'x at 31; *Story*, 503 F.3d at 440–41. Although, unlike the cited cases, the district court *stated* the correct Guidelines range in this case, that distinction has no bearing on the plain-error analysis, which focuses on whether a clear error increased the length of the defendant's

- 11 -

sentence. *United States v. Milan*, 398 F.3d 445, 451–52 (6th Cir. 2005). Regardless of what the district court said, the district court's use of the incorrect range almost certainly increased the length of Batista's sentence, which negatively impacts both his substantial rights and the integrity of the judicial proceeding. *See Story*, 503 F.3d at 440. As a result, Batista has shown plain error.

C

Because we hold that Batista's sentence is procedurally unreasonable and remand for resentencing, we need not decide the question of whether it is also substantively unreasonable. *United States v. Novales*, 589 F.3d 310, 314-15 (6th Cir. 2009) (citing *Gall*, 552 U.S. at 51). We note, however, that Batista's sentence is longer than is typical for 8 U.S.C. § 1326 violations[5] and that, at resentencing, the district court may review all sentencing issues de novo. *United States v. Gibbs*, 626 F.3d 344, 350–51 (6th Cir. 2010). In particular, the district court retains the authority to consider whether the Guidelines' stark 16-level enhancement[6]—on account of a separate crime Batista committed seventeen years ago as a teenager—adequately reflects the § 3553(a) factors as

---

[5]*See United States v. Ruiz*, 2010 WL 4721146, at *1 (6th Cir. November 15, 2010) (18 months for a 8 U.S.C. § 1326 violation where the alien had illegally entered the country seventeen times); *United States v. Tristan-Madrigal*, 601 F.3d 629, 630–31 (6th Cir. 2010) (36 months for a 8 U.S.C. § 1326 violation where alien had illegally entered the country four times); *United States v. Calderon*, 317 F. App'x 435, 435–36 (6th Cir. 2007) (38 months—with the same 16-level enhancement applied to Batista—for a 8 U.S.C. § 1326 violation where the alien had "returned to the United States illegally several times, ha[d] been convicted of a number of crimes, including robbery/burglary, concealed weapon, theft, petty theft, alien smuggling, and ha[d] been deported several times").

[6]Without that enhancement, Batista's Guidelines range would be 6 to 12 months in prison, even accounting for his criminal history category of V.

they apply to *this* crime and, if not, to vary accordingly. *United States v. Brissett*, 375 F. App'x 473, 478 (6th Cir. 2010); *United States v. Herrera-Zuniga*, 571 F.3d 568, 584–85 (6th Cir. 2009).

III

For the foregoing reasons, we VACATE Batista's sentence and REMAND to the district court for resentencing consistent with this opinion.