*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0435p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 06-1916

TIMOTHY ALLEN GIBBS,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00003—Robert Holmes Bell, Chief District Judge.

Argued: September 17, 2007

Decided and Filed: October 29, 2007

Before: BATCHELDER and GILMAN, Circuit Judges; STAFFORD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Michael Robert Bartish, WILLEY & CHAMBERLAIN, Grand Rapids, Michigan, for Appellant. Michael L. Schipper, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Michael Robert Bartish, WILLEY & CHAMBERLAIN, Grand Rapids, Michigan, for Appellant. Michael L. Schipper, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. Timothy Allen Gibbs, Muskegon, Michigan, pro se.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Timothy Allen Gibbs appeals his jury conviction on one count of being a felon in possession of a firearm and the corresponding sentence of 108 months' imprisonment. He was indicted on the basis of a handgun that was found in the basement bedroom of his mother's residence, where he had been living. Gibbs has raised three issues on appeal: (1) that the district court abused its discretion and violated the terms of its own motion-in-limine order by allowing evidence of prior bad acts, (2) that the district court erred in allowing into evidence an out-of-court statement in violation of the Confrontation Clause of the Sixth Amendment, and (3) that the district court committed plain error by ordering Gibbs's federal sentence to run

_____

[*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

consecutively to a sentence that he was serving for a state-court conviction. For the reasons set forth below, we **AFFIRM** Gibbs's conviction, but **VACATE** his sentence and **REMAND** for resentencing.

## I. BACKGROUND

### A.    Factual background

In August of 2005, officers from the Muskegon County Sheriff's Department and the Michigan State Police were investigating a series of burglaries in Muskegon County, Michigan. Gibbs and another individual, Billy Joe Miel, were identified as suspects in these burglaries. Both Gibbs and Miel were convicted felons on parole at the time. Detective Brent Sowles of the Muskegon County Sheriff's Department and Trooper William Coon of the Michigan State Police interviewed Gibbs at the office of his parole agent on August 10, 2005.

According to Sowles, Gibbs denied any involvement in the burglaries. But Gibbs did provide information that he claimed to have received from Miel about the location of some guns. Gibbs also denied that there were any guns at his mother's residence. He then said, however, "I don't know if my cousin had picked up a gun, but there was a gun of my cousin's there." Gibbs's parole officer, Don Cole, interrupted the interview to tell Sowles and Coon that Gibbs may have "some long guns, shotguns and/or rifles hidden in his basement bedroom." Cole testified that he had received this tip from another parole officer, who had in turn received the information from a parolee named Frank Kuzyk. When Gibbs was informed that Cole was going to conduct a search of the bedroom and was asked what Cole could expect to find, Gibbs replied that there was a pistol lying on a shelf a few feet from the bed. Gibbs denied, however, possessing or attempting to sell firearms.

After the interview with Gibbs had concluded, investigators from the Michigan State Police went to the residence located at 224 West Grand Avenue in Muskegon. Gibbs lived there with his mother, Denise Vos. When the investigators arrived, parole agents were already there conducting a search pursuant to the search clause in Gibbs's parole order. In the basement bedroom that Gibbs occupied, officers found a .380 caliber Llama pistol on a shelf near the headboard of the bed. Agents also found several rounds of .380 and .22 caliber ammunition, three knives, a roll of firecrackers, and a gun scope.

In the meantime, Gibbs had been arrested and was being held in the county jail. While in jail, he made a telephone call to his friend Justine Barrett, a recording of which was admitted into evidence. Gibbs told Barrett that "well, they got me—they got that pistol at my house." He instructed Barrett to call either his sister (Heather Bramer) or his girlfriend (Rachel DeKubyer) and ask them to claim the gun as theirs because "ain't neither one of them ever been in no shit."

### B.    Procedural background

Gibbs was indicted in January of 2006 on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before trial, Gibbs stipulated that he was a convicted felon and that the weapon at issue, the .380 Llama pistol described in the indictment, had traveled in interstate commerce. Thus the only element of the charged offense that the government was required to prove at trial was that Gibbs had actual or constructive possession of the firearm. In putting on its proof, however, the government was prohibited by a pretrial order from introducing evidence linking Gibbs to multiple uncharged larcenies and home invasions unrelated to the present offense, as well as any evidence of Gibbs's alleged involvement in a drive-by shooting in Muskegon.

Gibbs was convicted by the jury after a two-day trial in March of 2006. He was later sentenced by the district court to 108 months of imprisonment. Gibbs originally appealed only his

conviction, but subsequently was allowed to supplement his appeal to address a plain error allegedly committed by the district court in sentencing him.

## II. ANALYSIS

### A.     Standard of review

We review the district court's evidentiary rulings under the abuse-of-discretion standard. *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (citation and quotation marks omitted). We will reverse the district court's decision "only if we are firmly convinced that a mistake has been made." *Id.*

Gibbs failed to object to the admission of parolee Kuzyk's out-of-court statement at trial and did not raise the alleged sentencing error in his final brief. Pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure, however, "a plain error that affects substantial rights may be considered even though it was not brought to the court's attention." But review of forfeited claims is "circumscribed by the standard of review for plain error." *United States v. Graham*, 275 F.3d 490, 522 (6th Cir. 2001). Plain-error review requires us to determine whether: "(1) there was an error, (2) which was plain, (3) that affected the defendant's substantial rights, and (4) that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005).

### B.     Evidence of other acts

Gibbs's first argument on appeal is that the government violated the district court's pretrial order by "repeatedly elicit[ing] testimony from its law enforcement witnesses" regarding Gibbs's involvement in various home invasions in the Muskegon County area. Although he does not specify the precise testimony that allegedly should have been excluded, Gibbs cites generally to testimony by Trooper Coon, Detective Sowles, Parole Agent Cole, and Trooper Andrew Fias.

Trooper Coon testified that part of his assignment during the spring and summer of 2005 was to investigate home invasions that had taken place in the Muskegon area. In the course of the investigation, he had asked Agent Cole to identify two men from a video surveillance tape. This led to the questioning of Gibbs and his subsequent admission that officers would find a gun next to the bed in the basement of his mother's house located at 224 West Grand Avenue. Counsel for Gibbs twice objected to this testimony on the basis of relevance, but the district court overruled the objections.

On appeal, Gibbs argues that his defense counsel "objected to the testimony pursuant to Rule 403, but more properly should have objected to the testimony pursuant to Rule 404(b)" of the Federal Rules of Evidence. A review of the record, however, reveals that both objections to Trooper Coon's testimony were made on the basis of relevance, which is an objection under Rule 401. That rule defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The government's theory of the case was that Gibbs stole several guns, including the .380 Llama pistol, while committing a burglary. Trooper Coon's testimony was relevant background information offered to show how his investigation led him to Gibbs. It also provided context for Gibbs's admission that a gun would be found in his bedroom. We thus conclude that the district court did not abuse its discretion by allowing this testimony over the defense's objection of relevancy.

Detective Sowles testified that he was also investigating home invasions in Muskegon County. Sowles's testimony described his interview with Gibbs about the latter's possible involvement in these home invasions and Sowles's involvement in the subsequent search of the residence at 224 West Grand Avenue. His testimony is relevant for the same reason that Trooper Coon's testimony is relevant, and therefore the district court did not abuse its discretion by admitting it. Moreover, Gibbs's counsel did not object to any of the testimony when given, and he has failed to specify exactly what portions of Sowles's testimony should not have been admitted.

Trooper Fias also testified about his involvement in the home-invasion investigation and about his participation in the interview with Gibbs. Gibbs's counsel made one hearsay objection, which was sustained. Finally, Agent Cole's testimony offers much of the same background information, and Gibbs's counsel made no objection to any of it. Nor does Gibbs explain on appeal exactly what is objectionable about these officers' testimony. Although the government was prohibited by the pretrial order from offering testimony about Gibbs's involvement with the home-invasions, the officers' tangential testimony on this subject provided necessary background into how they were led to Gibbs and their discovery of the firearm. We find no error in the admission of this evidence.

Gibbs next argues that the district court abused its discretion in admitting the testimony of Billy Joe Miel with respect to Gibbs's alleged involvement in a drive-by shooting in Muskegon during the summer of 2005. At the pretrial hearing on Gibbs's motion in limine, the district court ruled that Miel could testify as to whether he had seen Gibbs with specific guns and whether Miel had ever seen those guns before. The court also ruled that Miel could testify about his belief that the guns belonged to his cousin, Troy Ropp. On the other hand, the order prohibited Miel from testifying about whether he had ever seen Gibbs fire the .380 Llama pistol or about a bullet that was allegedly fired from the gun.

At trial, Miel testified that he had seen Gibbs with a gun at some point during the previous summer. He was not sure whether the gun was a .380 caliber, but described it as a "little black gun." The government also elicited testimony that during the summer of 2005, Miel saw Gibbs retrieve a handgun from his bedroom in the basement of the 224 West Grand Avenue residence, leave the residence, and return a short time later to ask Miel's assistance in recovering a number of .380 shell casings from Gibbs's car. Counsel for Gibbs objected on the basis that this testimony violated the order on the motion in limine, but the district court overruled it.

Gibbs concedes on appeal that Miel did not specifically testify that Gibbs participated in a drive-by shooting, but instead argues that the line of questioning in which the government engaged "certainly implied it." Nothing in Miel's testimony, however, runs afoul of the motion-in-limine order. In the motion, Gibbs objected to the introduction of a .380 caliber bullet recovered from the residence of Gibbs's ex-girlfriend. At the final pretrial conference, the government stated that it would "have testimony about individuals seeing this defendant with the gun," but would not offer testimony from anyone claiming that they saw Gibbs shoot the gun. Counsel for Gibbs replied that this stipulation from the government resolved his issue with respect to the bullet. The bullet was not introduced, nor was any testimony from witnesses claiming that they saw Gibbs shoot a gun. We conclude that the district court did not abuse its discretion in its ruling on this issue.

Gibbs also argues that the district court abused its discretion in allowing Miel to testify that he had seen other guns in Gibbs's bedroom. Counsel for Gibbs objected on the basis that this testimony was more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. This argument is meritless. Gibbs was initially investigated because of burglaries in the Muskegon area. Moreover, the search of his bedroom was a result of law enforcement's learning that Gibbs had potentially hidden several long guns, stolen in those burglaries, in that bedroom. Any testimony of this nature was relevant background evidence and not unfairly prejudicial under Rule 403.

Gibbs has made no showing, other than by conclusory allegations, that the testimony's probative value was substantially outweighed by unfair prejudice. *See United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996) ("[T]he prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence.") (emphasis in original). Moreover, this court "must view the evidence in the light most favorable to the government by maximizing the probative value of the evidence and minimizing its potential prejudice." *Id*.

We further hold that all of the alleged evidentiary errors were harmless, even if we were to assume that some or all of the above testimony was improperly admitted into evidence. *See United States v. Rayborn*, 491 F.3d 513, 518 (6th Cir. 2007). "In determining whether an error is harmless, the reviewing court must take account of what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened." *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005) (brackets, citation, and quotation marks omitted). We would have to conclude "that it was more probable than not that the error materially affected the verdict," *id*., in order to rule in Gibbs's favor.

In the present case, the government had overwhelming evidence that Gibbs had actual or constructive possession of the .380 Llama pistol, including Gibbs's admission that there was a gun in his bedroom on a shelf just above his bed. When the officers arrived at 224 West Grand Avenue, Gibbs's mother identified the basement bedroom in which the gun was found as Gibbs's bedroom. The gun was discovered exactly where Gibbs said it would be. Miel also testified in front of the grand jury that he had witnessed Gibbs handle the .380 Llama pistol on several occasions. Although Miel tried to recant some of this testimony at trial, the government read portions of the grand jury testimony into evidence. The jury was free to believe or disbelieve either the grand jury testimony or the trial testimony of Miel. Finally, Gibbs made a recorded phone call from jail where he acknowledged that officers "got" him by recovering the pistol from his bedroom, and inquiring as to whether someone else would claim ownership of the gun so that he could escape prosecution.

In short, the present case is not at all similar to *Pugh*, where an out-of-court statement improperly admitted into evidence was the only evidence placing the defendant at the scene of the crime. *See id*. Here, Gibbs proved the government's case through his own admission that the gun was in his bedroom and through his jailhouse phone call. Even if we had determined that the above testimony was improperly admitted into evidence, we would still conclude that any error was harmless.

## C.    Confrontation Clause

Gibbs also claims that the district court erred in admitting an out-of-court statement by Frank Kuzyk, a fellow parolee, through the testimony of Agent Cole. Cole testified that Kuzyk told him that Gibbs had some long guns hidden in his basement bedroom. This statement, Gibbs contends, was improperly admitted hearsay in violation of the Confrontation Clause of the Sixth Amendment. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). This court has held that "statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant." *United States v. Cromer*, 389 F.3d 662, 670-71 (6th Cir. 2004) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). The admission of a testimonial statement, however, does not necessarily trigger a violation of the Confrontation Clause. *Pugh*, 405 F.3d at 399. To do so, "the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *Id*. We must thus determine (1) whether Kuzyk's statement

was testimonial in nature, and (2) whether it was offered to prove the truth of the matter asserted. *See id.*

The government does not contest the fact that Kuzyk's statement, made to his parole agent, was testimonial in nature. *See Cromer*, 389 F.3d at 675 (concluding that a statement is testimonial where a reasonable person would anticipate that his or her statement would later be used "against the accused in investigating and prosecuting the crime"). We thus need to determine only whether the statement was hearsay. The government contends, and we agree, that Kuzyk's statement was not hearsay, but instead testimony offered simply as background evidence. "In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990); *cf. Cromer*, 389 F.3d at 676 (finding a Confrontation Clause violation where the out-of-court statement implicated the defendant in the charged crime and thus went "to the very heart of the prosecutor's case").

Here, Agent Cole testified that Kuzyk told him that Gibbs "had some long guns, shotguns and/or rifles hidden in his basement bedroom." Cole offered this testimony solely as background evidence to show why Gibbs's bedroom was searched. Whether Gibbs had long guns, shotguns, or rifles in his bedroom was not offered for its truth, because the testimony did not bear on Gibbs's alleged possession of the .380 Llama pistol with which he was charged. Moreover, a review of the record reveals that Agent Cole's mention of Kuzyk was a miniscule part of his overall testimony, and Kuzyk was mentioned only once more, during the government's closing argument.

We further conclude that any error in admitting Cole's testimony regarding Kuzyk was harmless in light of all of the other evidence against Gibbs, including Gibbs's own admissions. *See United States v. Hayes*, 218 F.3d 615, 622-23 (6th Cir. 2000) (holding that, under plain-error review, the defendant would not have been entitled to relief even if the court had found a violation of the Confrontation Clause because any error was harmless).

## D.    Sentencing

The final issue raised by Gibbs concerns the length of his combined federal and state sentences. At the time Gibbs was indicted for the instant offense, he was in the custody of the Michigan Department of Corrections for violating the terms of his state parole. Gibbs had not yet been sentenced for the parole violation when he was sentenced by the district court. In sentencing Gibbs, the district court stated that, "[o]bviously, a sentence of this Court pursuant to guideline section 561.3(c) [sic], which is a recitation of the law in this matter, means that a sentence must be consecutive to the state sentence which has underlying violations of parole not necessarily related to this case." Gibbs contends that the district court committed clear error in ordering that Gibbs's federal sentence run consecutively to any sentence imposed by the Michigan Department of Corrections.

Both parties agree that Sentencing Guidelines § 5G1.3(c), designated as a Policy Statement, was applicable to Gibbs in determining whether his federal sentence should be served concurrently or consecutively to any state sentence imposed for his parole violations. Section 5G1.3(c) provides that, "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment." U.S. Sentencing Guidelines Manual § 5G1.3(c) (2006). Gibbs argues that the district court's statement that the sentence "must be consecutive to the state sentence" constitutes plain error because the court mistakenly believed that § 5G1.3(c) required the imposition of a consecutive sentence, despite the explicit discretionary language of the Guideline. In response, the government contends that the district court has applied § 5G1.3(c) "literally

hundreds of times," and that "[i]t was clear to everyone at sentencing that USSG § 5G1.3(c) allows the court to impose either a consecutive or concurrent sentence."

Although we have not previously ruled on this particular issue, this court has repeatedly held that a district court commits plain error when it mistakenly believes that the policy statements contained in Chapter 7 of the Sentencing Guidelines limit its discretion. *United States v. Jackson*, No. 05-6884, 2007 WL 2286540, at *2 (6th Cir. Aug. 9, 2007); *United States v. Green*, 157 F. App'x 853, 858 (6th Cir. 2005); *United States v. Sparks*, 19 F.3d 1099, 1101 (6th Cir. 1994). These prior cases addressed the application of § 7B1.3(f), which provides that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release *shall be ordered* to be served consecutively . . . ." U.S. Sentencing Guidelines Manual § 7B1.3(f) (2006) (emphasis added). Section 5G1.3(c), on the other hand, has explicit permissive language, granting discretion to the district court to impose a concurrent, partially concurrent, or consecutive federal sentence. In light of the explicit language of § 5G1.3(c), the district court's statement that Gibbs's federal sentence must be consecutive to his state sentence constitutes plain error. *See Jackson*, 2007 WL 2286540, at *2; *Green*, 157 F. App'x at 858; *Sparks*, 19 F.3d at 1101.

Moreover, where the district court believes that an aspect of the Guidelines is mandatory, there is a presumption of prejudice to the substantial rights of the defendant, and a remand for resentencing is required. *United States v. Trammel*, 404 F.3d 397, 402 (6th Cir. 2005) (noting that prejudice is presumed because the district court's failure to recognize its discretion in sentencing renders it impossible for the defendant "to show that the subjective decision of the court would have been different if the error had not occurred"). We conclude that the analysis previously applied by this court to Chapter 7 of the Guidelines is applicable here, and hold that treating § 5G1.3(c) as leaving the district court without discretion to impose a federal sentence concurrent or partially concurrent with an undischarged term of state imprisonment is reversible error requiring a remand for resentencing. *Id.*

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Gibbs's conviction, but **VACATE** his sentence and **REMAND** for resentencing consistent with this opinion.