NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0349n.06

No. 18-1804

**FILED**
Jul 10, 2019
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JEFFERY DEGENAER, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: **SILER, BATCHELDER, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge**. Jeffery Degenaer, an Indian tribal resident, was convicted by a jury of assaulting his girlfriend by strangling or attempting to strangle, in violation of 18 U.S.C. § 113(a)(8), and assault by striking, beating, or wounding, in violation of 18 U.S.C. § 113(a)(4). The district court sentenced Degenaer to 37 months on count one and 12 months on count two, to run consecutively. On appeal, Degenaer challenges his conviction, arguing that the district court plainly erred by permitting the government to elicit expert testimony that victims of domestic violence by strangulation are 700 percent more likely to become victims of homicide.[1] We affirm Degenaer's conviction.

---

[1] Though Degenaer makes reference to the district court's admission of a 2015 incident between Degenaer and D.R.V., in which Degenaer is alleged to have strangled D.R.V., Degenaer concedes in his brief that "there is no meritorious issue for appeal with regard to the trial court's allowance of the similar acts evidence under FRE 404(b)." Appellant's Br. at 25–26. Therefore, we do not address this issue.

**I.**

Degenaer and D.R.V. dated "off and on" for several years. [R. 99, PageID 887]. D.R.V. lived with her brother and sister in Baraga, Michigan. Degenaer lived with his parents nearby and visited D.R.V. at her apartment "every single day." [*Id*., PageID 887–88]. On March 6, 2017, Degenaer and D.R.V. began the day playing board games at D.R.V.'s apartment. [*Id*., PageID 887–88]. They later "went driving around Baraga County Lake," where they stopped to pet deer that they encountered. [*Id.*, PageID 889, 926]. Degenaer took photographs of D.R.V. petting the deer. [*Id.*]. Degenaer then drove back to D.R.V.'s apartment, where they began to consume alcohol. [*Id.*, PageID 890]. After D.R.V. stated that she was hungry, the two left for Degenaer's house. [*Id.*].

Once there, Degenaer accused D.R.V. of cheating on him, something she denied. [*Id.*, PageID 890]. When the argument escalated, D.R.V. became "[s]cared" and "told [Degenaer] that [she] wanted to go." [*Id.*, PageID 894]. D.R.V. attempted to leave, but Degenaer "jumped from the stairs and slammed the door [closed] with his feet." [*Id.*]. D.R.V. tried to call her sister and friend for help, but Degenaer "took [her] phone and he threw [it on the ground] outside," shattering it. [*Id.*, PageID 895]. Degenaer then began to punch D.R.V. in the face, using his fists and her own hands, and threw a soda can at her head, causing the can to "explode[]" on impact. [*Id.*, PageID 897–98]. D.R.V. tried again to leave Degenaer's house, this time through his bedroom window. Degenaer "slammed the window shut almost on [D.R.V.'s] fingers, and shoved [her] down to the ground." [*Id.*, PageID 897–98]. When D.R.V. ran out of the bedroom into the hallway, Degenaer "grabbed [her] and choked [her] up against the wall." [*Id.*, PageID 901]. D.R.V., unable to breathe, "saw black" and "fell to the ground." [*Id.*, PageID 903]. When D.R.V. warned

Degenaer that his parents would be home soon and would find them there, Degenaer told D.R.V. that he would "kill her" and then "kill himself." [*Id.*].

After Degenaer went upstairs, D.R.V. "ran outside," recovered her broken cell phone, and ran down the road to look for help. [*Id.*]. D.R.V. went first to Brandon Lamson's house, but he did not answer the door. [*Id.*, PageID 910]. She then ran across the street to Betty Saari's house. [*Id.*, PageID 910–11]. Saari observed that D.R.V. "was upset" and that she was "crying." [*Id.* at PageID 962–63]. D.R.V. used Saari's phone to call her sister Deanna. [*Id.*]. D.R.V. informed Deanna that Degenaer "had beat her up and she needed [Deanna] to pick her up immediately." [*Id.*, PageID 981]. D.R.V. waited outside of Saari's house. While she was waiting, Lamson came out of his house "to see what was going on." [*Id.*, PageID 972]. Lamson observed that D.R.V. was "frantic" and "crying," and that she stated that Degenaer "had beat her up." [*Id.*].

At some point afterward, Deanna arrived. She noticed that D.R.V. was "crying hysterically," that her "jacket was torn up," and that "she had marks on her neck." [*Id.*, PageID 982]. Deanna took D.R.V. to the tribal police station to file a report. [*Id.*].

Tribal Officer Sergeant Everett Ekdahl interviewed D.R.V. regarding the assault, collected her smashed cell phone, and took photographs of her injuries. [*Id.*, PageID 991]. He testified that when D.R.V. arrived at the station, she "looked to be in distress" and that she had a "small red line on her neck." [*Id.*, PageID 990]. Sergeant Ekdahl also stated D.R.V. told him that Degenaer "hit and choked" her. [*Id.*, PageID 991]. Sergeant Ekdahl suggested that D.R.V. seek medical treatment at a nearby hospital. [*Id.*, PageID 993].

Deanna drove D.R.V. to Baraga County Memorial Hospital, where she was first examined by registered nurse Kristina Griffith. [*Id.*, PageID 1071]. Griffith testified that when D.R.V. arrived, "her whole body was tremoring," and she informed Griffith that "she had been strangled"

by her ex-boyfriend, which "caused her to pass out." [*Id.*, PageID 1072]. While examining D.R.V., Griffith observed "two 5-inch abrasions to the right side of [D.R.V.'s] neck and some redness to the back of her head." [*Id.*]. The emergency room physician, Dr. Mark David Cecilio, testified that D.R.V. stated that she "was choked," and "hit in the back of the head" and that Degenaer used D.R.V.'s hands to "hit herself in the face." [*Id.*, PageID 1081–82]. Dr. Cecilio observed "abrasions to [D.R.V.'s] neck with some early signs of bruising." [*Id.*, PageID 1082].

Prior to Degenaer's trial, the government provided notice that it intended to call Jill Rable, a forensic nurse from Arizona, to testify concerning, among other things, the correlation between incidences of strangulation in a relationship and incidences of subsequent domestic violence. Degenaer did not object to Rable's proposed testimony. At trial, Rable testified that, of the ten homicide or homicide/suicide cases that she has researched in the last three years, "nine of the ten [victims] had reported strangulation prior to [the] homicide or suicide/homicide." [*Id.*, PageID 1055]. Rable further testified that, in domestic relationships where strangulation occurs, victims of domestic violence "are 700 percent more likely to end up dead in the future because of this." [*Id.*, PageID 1054]. Degenaer did not object.

The jury convicted Degenaer of one count of assault by strangling or attempting to strangle D.R.V., in violation of 18 U.S.C. § 113(a)(8), and one count of assault by striking, beating, or wounding D.R.V., in violation of 18 U.S.C. § 113(a)(4).

## II.

On appeal, Degenaer contends his right to a fair trial was substantially affected by Rable's "clearly prejudicial" testimony, claiming that it "removed any chance of an acquittal from the province of the jury." Appellant's Br. at 29. We disagree.

Generally, we review the district court's evidentiary rulings under the abuse-of-discretion standard. *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005). However, as Degenaer acknowledges in his brief, because he failed to object to Rable's testimony, we review the admission of her testimony for plain error. *See United States v. Gibbs*, 506 F.3d 479, 483 (6th Cir. 2007). Under plain error review, we consider whether: "(1) there was an error, (2) which was plain, (3) that affected the defendant's substantial rights, and (4) that, in our discretionary view, seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted). To demonstrate that an error affected his substantial rights, Degenaer must show "a reasonable probability that, but for the error, the outcome of the proceedings would have been different." *Rosales–Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018); *see also United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000) ("An error affects substantial rights when the error was prejudicial, that is, when it 'affected the outcome of the district court proceedings.'") (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Even if Degenaer is correct that the district court erred by allowing Rable to testify regarding the correlation between strangulation and homicide, the error did not affect Degenaer's substantial rights. The testimony proffered by the other witnesses at trial provided ample evidence to support Degenaer's convictions. D.R.V. testified that Degenaer "grabbed [her] and choked [her] up against the wall" until she passed out, punched her in the face, and threw a soda can at her head. She also pointed out that she did not have bruising or abrasions on her neck in the photographs taken of her by Degenaer when they stopped to pet the deer prior to the alleged incident, but she did afterward. D.R.V. also consistently reported that Degenaer had strangled and punched her. Deanna and Lamson testified that, when they saw D.R.V., she was "crying," and she stated

Degenaer had "beat[en] her up."  Similarly, D.R.V. reported to Dr. Cecilio and Sergeant Ekdahl that Degenaer choked her and hit her in the face.  Deanna, Griffith, Dr. Cecilio, and Sergeant Ekdahl also observed abrasions on D.R.V.'s neck.  Considering this evidence, a jury could have convicted Degenaer without Rable's testimony.  Accordingly, we see no reasonable possibility that Rable's testimony "swayed the jury such that [its] admission warrants reversal of [Degenaer's] conviction."  *United States v. Warman*, 578 F.3d 320, 347 (6th Cir. 2009).

## III.

For these reasons, we affirm Degenaer's convictions.