**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0691n.06

Case No. 19-5956

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Dec 11, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MARTY K. TUTTLE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: DAUGHTREY, DONALD, and READLER, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Marty K. Tuttle appeals his conviction of

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Tuttle argues that

the government violated his Sixth Amendment Confrontation Clause rights by playing a video at

trial that contained testimonial out-of-court statements, without making the declarant available for

cross-examination. We disagree and AFFIRM.

## I. BACKGROUND

On September 30, 2018, Marty K. Tuttle was sitting in the front passenger seat of a vehicle

parked at a gas station in Tazewell, Tennessee. The driver, Danny King, was under the hood of

the vehicle making repairs. Tazewell Police Department Officer Jason Pabon, recognizing King

as a person wanted for multiple outstanding warrants, approached the vehicle. During King's

initial conversation with Officer Pabon, he denied that he was the subject of the warrants. Officer

Pabon told King that he knew the truth about his identity, proceeded to frisk him, and place him in handcuffs.

While talking with King, Officer Pabon saw Tuttle's left arm moving towards the driver's back-seat area. Officer Pabon pulled out his taser, pointed it at Tuttle, and told him to stop reaching. Officer Pabon then instructed Tuttle to place his hands on the dash, and Tuttle complied. After Officer Pabon placed King in the back seat of the police vehicle, he returned to search King's vehicle with a flashlight. Through this search, Officer Pabon noticed the grip of a pistol on the floorboard, between driver's seat and the back seat.

Office Pabon walked around the car, opened the passenger door, and removed Tuttle from the car. As Tuttle was getting out of the passenger seat, a beer can fell to the ground. Tuttle was subsequently placed in handcuffs and read his *Miranda* rights. Officer Pabon told Tuttle that he observed him reaching for the firearm, but Tuttle denied this, stating that he was reaching for his beer.

Officer Tyler Williams arrived at the scene and searched the car. He found a plastic box of ammunition underneath the front passenger seat and a firearm behind the driver's seat. Neither Tuttle's fingerprints nor his DNA were on the gun or the box of ammunition. However, the letters "M" and "T" were on the plastic ammunition box, and the bullets—0.380 caliber—matched the bullets in the firearm. When Officer Pabon asked King about the firearm, he replied that it did not belong to him. King then stated his name and said that the gun belonged to Tuttle, as he had previously seen him with the firearm. Tuttle was charged with one count of felon in possession of a firearm, and one count of possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). The case proceeded to trial.

At trial, the government presented testimony from three witnesses other than King: Officer Pabon; Officer Williams; and Tuttle's cellmate at Blount County Jail, Craig Lodge. The police officers testified about the night of Tuttle's arrest. Officer Pabon described seeing Tuttle reaching in the back seat, while Officer Williams testified about finding the firearm behind the driver's seat**.** Lodge further testified that Tuttle told him he had a gun in his belt prior to his arrest and tried to toss it in the trunk because the back seat was partially down.

The government also introduced body-camera footage during Officer Pabon's examination. Tuttle's counsel did not object to the admission of the video or attempt to have King's statements excluded. Counsel also told jurors during his opening statement that they would "see Danny King deny that he knew a gun and ammunition were in his car." Counsel asked jurors to pay attention to King's statements and to see "how many times King changed his story in response to officer questions that night." At closing, the government told the jury that King's statements are not important. Tuttle's counsel brought up King's statements in his closing argument, encouraging the jury to focus on King's calculated behavior. The jury returned a guilty verdict on the firearm offense, and the district court sentenced Tuttle to 63 months' imprisonment. Tuttle has timely appealed.

## II. ANALYSIS

Violations of the Confrontation Clause are subject to harmless-error analysis. *McCarley v. Kelley*, 801 F.3d 652, 665 (6th Cir. 2015) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). We first determine if the objection to the violation was waived or forfeited. *United States v. Koeberlein*, 161 F.3d 946, 948 (6th Cir. 1998). Forfeiture occurs when the defendant fails "to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). On the other hand, waiver is the "intentional

relinquishment or abandonment of a known right." *Id.* This Court declines to review waived arguments on appeal. *United States v. Denkins*, 367 F.3d 537, 543–44 (6th Cir. 2004).

When a defendant has forfeited an argument, we review it for plain error. *United States v. Martinez*, 588 F.3d 301, 313 (6th Cir. 2009) (citing *United States v. Hadley*, 431 F.3d 484, 498. (6th Cir. 2005)). To succeed on plain-error review, a party must show: "(1) error, (2) that is plain, (3) that affects substantial rights." Fed. R. Crim. P. 52(b); *United States v. Collins*, 799 F.3d 554, 576 (6th Cir. 2015). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if [ ] the error seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Collins*, 799 F.3d at 576 (quoting *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007)). The defendant bears the burden of persuasion with respect to showing prejudice. *Olano*, 507 U.S. at 734.

Since Tuttle did not object to the admission of the video on Confrontation Clause grounds at trial, we deem it to be forfeited and review his claim for plain error.[1] There is no dispute that Tuttle had no opportunity to cross-examine King. The issue before us today is whether King's statements to the police identifying Tuttle as the owner of the gun were testimonial hearsay, and whether the district court committed plain error in admitting that evidence.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. Under the Confrontation Clause, a testimonial statement of a witness who does not testify at trial cannot be introduced for its truth unless: (1) the witness is unavailable; and (2) the defendant had a prior opportunity to examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The protections under the Confrontation Clause apply if the statement is both: testimonial and made to

---

[1] Since Tuttle forfeited his objection, we decline to address the government's assertion that counsel may waive an accused's right to confront witnesses under the Confrontation Clause.

establish the truth of the matter asserted. *Id.* at 59-60, 68. Non-testimonial statements, or statements that are made for other purposes, are not protected under the Confrontation Clause. *Id.* at 59 n.9; *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007); *see United States v. King*, 865 F.3d 848, 85052 (6th Cir. 2017).

The Supreme Court has outlined which statements, particularly when made to the police, are testimonial. "Statements taken by police officers in the course of interrogations are . . . testimonial." *Crawford*, 541 U.S. at 52. However, not all statements made to police officers are testimonial. The Supreme Court in *Davis v. Washington*, 547 U.S. 813 (2006), clarified that statements made in response to interrogation can be nontestimonial if they are made "to meet an ongoing emergency." *Id.* at 822. Alternatively, when the objective purpose of the interrogation is "to establish or prove past events potentially relevant to later criminal prosecution," the statement is testimonial. *Id.* Volunteered, informal statements can be testimonial if "a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

The Court in *Davis* found that the declarant's statements were not testimonial because the declarant: (1) "was speaking about events *as they were actually happening*, rather than descri[bing] past events"[;] (2) "was facing an ongoing emergency"[;] (3) was asked questions "necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past" [;] and (4) the questioning took place in an informal setting. *Davis*, 547 U.S. at 827 (internal quotations marks and citations omitted). In contrast, the declarant in the companion case made statements deemed testimonial because there was no emergency in progress at the time of the interrogation, and the officer who questioned him "was not seeking to determine . . . 'what is

happening,' but rather 'what happened.'" *Id.* at 830. Additionally, "the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." *Id.*

We find King's statements to be testimonial. "An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the 'primary purpose of the interrogation.'" *Michigan v. Bryant*, 562 U.S. 344, 360 (2011). Here, there was no ongoing emergency, and the primary purpose of King's statements was to establish past events that were relevant in a criminal prosecution. Officer Pabon repeatedly asked King questions about the gun and to whom it belonged. A reasonable observer would have thought that the primary purpose of Officer Pabon's interrogation of King was to determine gun ownership, as this would indicate that there was illegal possession of a firearm. We also find that the statements were offered for the truth of the matter asserted. The government introduced the statements into evidence through body-camera footage of Officer Pabon and used the entirety of the footage, including those statements, to prove that the firearm belonged to Tuttle. At closing, the government stated that "Danny King is not the best witness to come testify before you. Officer Pabon's camera is . . . ." R. 46, Trial Tr., Page ID# 3779. Accordingly, King's statements were offered for the truth of the matter asserted and are hearsay.

Having determined that the district court plainly erred in admitting King's statements, we next ask whether their admission affected Tuttle's substantial rights. We find that it did not. The Supreme Court has clarified that to affect substantial rights, "an error must have 'substantial and injurious effect or influence in determining the . . . verdict.'" *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The burden is on the defendant to show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different[.]" *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343

(2016) (quoting *Dominguez Benitez*, 542 U.S. at 82). Tuttle fails to meet this burden. The information conveyed in King's hearsay statements was already before the jury through other admissible evidence. The government presented the testimony of Officer Pabon, Officer Williams, and Tuttle's cellmate. In its closing argument, the government also specifically told the jury not to focus on King's statements. While we caution parties against introducing evidence and subsequently asking the jury to not rely on it, this error does not meet the *Molina-Martinez* standard. *See Molina-Martinez*, 136 S. Ct. at 1343. King's testimony should have been properly limited through instructions to the jury, or excluded altogether, in order not to confuse the jury. We find that Tuttle has not demonstrated that the government's introduction of King's statements substantially affected his rights.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.